Adam S. Katz, Esq.
Hilary Dinkelspiel, Esq.
Goldberg Segalla LLP
711 Third Avenue, Ste. 1900
New York, NY 10017
646-292-8787

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

K7 Design Group, Inc.,

       Plaintiff,

v.

Fashion Angels Enterprises, Inc. and Mark
Miller,

       Defendants.

**SECOND AMENDED
VERIFIED COMPLAINT**

Case No. 1:17-cv-6943

Plaintiff K7 Design Group, Inc. ("K7" or "Plaintiff") , by its attorneys, Goldberg Segalla

LLP, complaining of Defendants Fashion Angels Enterprises, Inc. ("Fashion Angels"), and

Mark Miller ("M. Miller") (collectively, referenced as "Defendants"), sets forth and alleges,

upon information and belief, as follows:

### SUMMARY OF ACTION

1.     Plaintiff brings this action against Fashion Angels, and M. Miller seeking

damages for breach of contract, violation of the New York Labor Law, unjust enrichment, and

fraudulent inducement.

2.     M. Miller, the CEO of Fashion Angels, knowingly and falsely misrepresented

Fashion Angels' level of sales to Plaintiff in order to induce it to enter into a sales representative

agreement, whereby K7, through its President, Isaac Kaplan ("Kaplan"), would use its significant

business relationships, as well as its time and money, to distribute Fashion Angels' products to at

least a dozen large, national retailers, such as Kohl's, Target, and Wal-Mart, some of which had offices in New York.

3.      K7 and Mr. Kaplan quickly learned that these representations concerning Fashion Angels' sales were false, but nevertheless fully and successfully performed its obligations set forth in the sales representative agreement with Fashion Angels and tripled Fashion Angels' sales in an eight-month period.

4.      Despite K7's successes with Fashion Angels, in August 2017, Fashion Angels' Director of Sales, M. Rincon, inexplicably and abruptly terminated Fashion Angels' independent sales agreement with K7 in breach of the agreement's terms, while still owing K7 approximately $350,000 in commissions.

## PARTIES

5.      Plaintiff K7 is a New York corporation with its principal place of business located at 183 Madison Avenue in Manhattan, New York.

6.      K7 has over 37 collective years of experience in designing, manufacturing, distributing, and marketing health and beauty accessories, bath accessories, home goods, and school supplies to department stores, pharmacies, and retailers, such as Target, Kohl's, Wal-Mart, Ross Stores, and Walgreens.

7.      Defendant Fashion Angels is a Wisconsin corporation that designs and manufactures tween girls' lifestyle and activity products.  Fashion Angels is located at 306 N. Milwaukee Street, Milwaukee, WI 53202.

8.      Upon information and belief, Defendant M. Miller, the co-founder and Chief Executive Officer of Fashion Angels, is a resident of Milwaukee, Wisconsin.

## JURISDICTION & VENUE

9.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Plaintiff is a citizen of a different state from any of the Defendants and the amount in controversy exceeds the statutory threshold, exclusive of interests and costs.

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.  Specifically, the contract between K7 and Defendant Fashion Angels was negotiated in Manhattan, New York, and Plaintiff marketed and sold Defendants' products from a showroom in Manhattan that was branded with the Fashion Angels logo throughout the space.

## FACTUAL BACKGROUND

### A. Defendant M. Miller Makes Fraudulent Misrepresentations In Order to Induce K7 to Form a Business Relationship with Fashion Angels

11.    In the beginning of 2016, Mr. Kaplan met M. Miller at a licensing convention in Las Vegas.  At the convention, M. Miller explained to Kaplan that he was thinking about retiring and selling Fashion Angels.  It was proposed that K7 could consider either acting as an agent to sell Fashion Angels or potentially come on board in some type of mutually collective relationship.

12.    Shortly thereafter, although M. Miller had agreed in multiple conversations to begin a new company with K7, it became clear that M. Miller had no serious intention to do so.

13.    As an alternative, M. Miller proposed that Kaplan act as a representative sales agent.  It was clearly explained to M. Miller on no less than four occasions over a short period that K7 and Kaplan were going to simultaneously turn down two other offers of manufacturers so they would be able to dedicate the appropriate time, workload, and finances to representing Fashion Angels.

14.     In November 2016, M. Miller met again with Kaplan in Wisconsin—this time with a proposal to form a venture whereby Plaintiff would expend its time and money and use its business relations and other efforts to exclusively sell and distribute Fashion Angels' products—school supplies, health and beauty products, and other accessories designed for tweens and teenagers—to retailers across the country.

15.     Of note, only one meeting discussing this arrangement occurred in Wisconsin.

16.     The goal of the business arrangement between Plaintiff and Fashion Angels was to set up a showroom for Fashion Angels in New York City that Plaintiff Isaac Kaplan would manage, along with his father, Michael Kaplan, and brothers, Eli Kaplan and Yehuda Kaplan (collectively, the "Kaplans"). The showroom would sell Fashion Angels' products to at least twelve Big Box retailers, some of which were located in New York City, as well as additional retailers over time.

17.     The Kaplans, who live and work in New York City, would also help distribute Fashion Angels' products as independent sales representatives.

18.     In return, Mr. Kaplan and his family members would receive commissions for the orders of Fashion Angels' goods that they were able to place with certain customers.

19.     In November 2017, Michael Kaplan and Zack Kaplan met with M. Miller at the Langham Hotel in midtown Manhattan to negotiate and finalize the terms of the independent sales agreement between Fashion Angels and the Kaplans, and at that meeting, M. Miller instructed Mr. Kaplan to begin looking for a viable showroom at once.

20.     While the average commission structure is no less than 5-10% in the marketplace, in an effort to jumpstart the relationship and work towards a new company, NewCo., the Kaplans agreed to work on a reduced non-industry standard of 4% commissions. M. Miller had

4

confirmed to Kaplan that the shortfall between the 4% and the industry standard commission would be offset by guaranteeing a minimum of $8 million in business for K7 to manage.

21.     Mr. Kaplan made it very clear to M. Miller that while K7 had multiple relationships with buyers for the health and beauty, bath, and accessory departments at several top retailers, its time and money were limited, so it could only strategically partner with a limited group of manufacturers.

22.     In order to induce Mr. Kaplan and K7 to help grow Fashion Angels' business, M. Miller represented at the meeting at the Langham Hotel that Fashion Angels had sold over $2 million in products in 2015 to Target and had over $6 million in active business to give to K7.

23.     As M. Miller correctly surmised, these representations would allow Mr. Kaplan to believe that Fashion Angels was a thriving enterprise with a successful baseline of business for K7 and caused K7 to partner with Fashion Angels over other similar companies.

24.     Unbeknownst to Mr. Kaplan and K7 at the time, these figures were completely manufactured.

25.     As M. Miller knew at the time he made the misrepresentations, in actuality, Fashion Angels had a limited relationship with Target in the toy department that was nowhere near $2 million in business and it had only about $1 million in active business for K7 to pursue—approximately 1/6 the business it had misrepresented it had for K7.

26.     Relying on these misrepresentations, K7 decided to act as a distribution representative for Fashion Angels.

**B. K7 Enters into an Agreement with Fashion Angels
and Significantly Increases Fashion Angels' Revenue**

27.     In or around December 2016, Plaintiff entered into an agreement with Fashion Angels to memorialize the independent sales agreement, wherein Fashion Angels agreed that the

"Kaplan team" would serve as an independent sales representative for at least one category of tween products, including beauty, toys and accessories, for the following retailers: Wal-Mart, Kohl's, 5-Below, Ross Stores, Walgreens, Burlington Coat Factory, Children's Place, Office Depot, VF Outlet, Dollar General, Family Dollar, Big Lots, Staples and Target (the "Agreement"). The Agreement is attached hereto as **Exhibit A**.

28.     Ross Stores has its main office in New York. Target and Kohl's also have large buying offices in New York City.

29.     Pursuant to the terms of the Agreement, Plaintiff was entitled to receive commissions from Defendant Fashion Angels equal to 4% of all sales to stores for which the "Kaplan team" was responsible on all business that was written, even if not shipped, starting December 10, 2016.

30.     In or around December 2016, Kaplan invested significant time and monetary resources to familiarize himself with Fashion Angels' products, brand, designs, and sales and marketing strategies.

31.     In December 2016, Kaplan also flew to Fashion Angels' headquarters in Milwaukee, Wisconsin, twice, to meet with Defendant M. Miller, and the Fashion Angels' development, design, and production team members to fully understand the company, its products, and mission in order to market Fashion Angels' products most effectively.

32.     Additionally, members of the Fashion Angels also regularly flew to New York to discuss and plan the New York City Fashion Angels showroom with the Kaplans. Senior executives and other Fashion Angels employees had meetings in New York City with the Kaplans to tour the showroom space and to review the specifications for the showroom in December 2016, and January and February 2017.

33.     Fashion Angels also came to the showroom in New York City to meet with Big Box retailers in New York.  Indeed, in February 2017, during the New York Toy Fair, Fashion Angels flew more than 20 employees from Milwaukee to New York City and conducted business for their business venture from the showroom.

34.     K7 spent a good deal of time, money, and other resources building out the New York City showroom for Fashion Angels.

35.     Determined to make this independent sales representative relationship profitable, despite M. Miller's misrepresentations about Fashion Angels' sales, K7 also used its significant pre-existing relationships with large retailers that they had developed over their years of experience in the health and beauty distribution to obtain lucrative contracts for Fashion Angels and have its products sold to large Big Box retailers and department stores, such as Target, Wal-Mart, and Ross Stores (including outposts of these brands located in New York State).

36.     By way of example, Plaintiff used its pre-existing relationships with buyers at Office Depot, Wal-Mart, and Target to not only get Fashion Angels' products into those stores, but also obtain better price terms than Fashion Angels otherwise would have been able to negotiate with these retailers.

37.     In addition, Kaplan shared proprietary negotiation techniques with M. Miller so Fashion Angels could better negotiate its position and monetary obligations to Target and other retailers.

38.     In the course of approximately eight (8) months, and as a result entirely of Plaintiff's sales and marketing efforts, Fashion Angels: (i) increased its sales at Kohl's from $1 million to $2.5 million in sales; (ii) increased its sales at Target from 0 to $6 million in sales; and (iii) increased its sales at Big Lots from $0 to $300,000.

**B.    Defendants Failed to Pay K7 Its Commissions**
       **and Provide Them with an Accounting of the Commissions**

39.    Unbeknownst to Kaplan at the time, almost from the onset of Plaintiff's business relationship, Fashion Angels took advantage of Plaintiff's relationships with retailers.

40.    Most notably, as Kaplan and K7 later learned, on multiple occasions, Fashion Angels' personnel tried to conduct an end-run around K7 and contacted buyers directly on behalf of Fashion Angels for categories of goods that the "Kaplan team" was exclusively meant to distribute for Fashion Angels thereby depriving K7 of the commission it was rightfully entitled to receive.

41.    For instance, Plaintiff has always had a strong relationship with the buyers at Walgreens and was exclusively responsible for distributing Fashion Angels' beauty products to Walgreens, including beauty products for Walgreens' Halloween market.

42.    In spite of the fact that Fashion Angels was aware of this relationship and that Plaintiff had previously pitched Christmas and other holiday beauty products to Walgreens, Defendants circumvented Plaintiff and contacted Plaintiff's point of contact at Walgreens directly, under the guise that Fashion Angels wanted to deliver samples of their Halloween orders personally.  In actuality, Fashion Angels had called the meeting with Walgreens in an attempt to get Walgreens to buy Christmas and other holiday beauty products directly from Fashion Angels.

43.    This conduct violated the terms of the Agreement, was not made in good faith, and made Kaplan look foolish.

44.    In another instance, Plaintiff, through Kaplan, was able to get Fashion Angels' products into Target's Bullseye program—something that Fashion Angels was never able to do without Plaintiff's pre-existing relationship with the retailer.

8

45.     In spite of the tremendous increase in sales as a result of Plaintiff's sales and marketing efforts, Fashion Angels failed to compensate Plaintiff for the commissions it was entitled to receive.

46.     Starting in or around June 2017, Kaplan repeatedly requested from M. Miller and Mr. Rincon that Fashion Angels pay the commissions owed to Plaintiff K7.

47.     Many of these commissions soon became 90 days past due.

48.     Eventually, in August 2017, Defendants paid K7 $5,000, but this was a far cry from the $35,000 owed to K7 at that time.

49.     Plaintiff, through Kaplan, also repeatedly requested that Mark Rincon provide it with an accounting of the Kaplan Team's sales and the commissions that Plaintiff was owed.

50.     Mr. Rincon repeatedly told Kaplan that the accounting would be forthcoming, yet, to date, Fashion Angels has not prepared this data—accounting data to which Plaintiff is legally entitled.

51.     Moreover, Defendants have caused  significant damage to Plaintiff's coveted business relationships with retailers, such as Staples, Office Depot, and Wal-Mart.  In one instance, M. Miller canceled an order that Mr. Kaplan had negotiated and placed with Office Depot because M. Miller was unhappy at the last minute with a standard term concerning returns of goods that were untimely shipped to Office Depot.  In addition to costing the Kaplans $20,000 in commissions, M. Miller's actions irreparably harmed Mr. Kaplan's relationship with the buyers at Office Depot.

52.     In another instance, in July 2017, K7 was able to secure a lucrative contract for Fashion Angels with Wal-Mart for the manufacturing and delivering of lip gloss and other make-up products.  Myra Mouloudji, a co-owner of Fashion Angels, canceled the order within days of

9

receiving the commitment and just weeks before it was due to be delivered to Wal-Mart, because Fashion Angels suddenly was unable to meet the delivery deadline. Kaplan, at the request of the buyer, stepped in and had K7 rush to manufacture the order to fulfill the space Wal-Mart had allotted for the Fashion Angels' order. Needless to say, the buyer for Wal-Mart was beyond aggravated with K7 for bringing this offer to Wal-Mart.

**D.     Defendants Improperly Terminated The Agreement with Plaintiff**

53.     On or about August 28, 2017, in spite of the fact that Plaintiff was responsible for doubling Fashion Angels' annual revenue generated from Kohl's and tripling the annual revenue generated from Target, Rincon sent an email to Mr. Kaplan inexplicably terminating Fashion Angels' Agreement with the "Kaplan Team," effective immediately.

54.     Rincon's notice was improper and breached the explicit terms of the Agreement, which required Defendant Fashion Angels to terminate the Agreement with a minimum of "30 days' notice."

55.     Additionally, Rincon, as Head of Sales, did not have the authority to terminate the Agreement, which was entered into by Fashion Angels' CEO, M. Miller.

56.     Despite all of the efforts Plaintiff and the Kaplans made and resources they expended, as well as the false misrepresentations that Defendants made in order to induce Plaintiff to help them, Fashion Angels terminated the Agreement, still owing Plaintiff $350,000 in commissions.

**E.     The October 29, 2017 Defamatory E-mail**

57.     Shortly after this lawsuit was commenced, in a ploy to destroy Plaintiff's relationship with Wal-Mart, at the direction of Mr. Rincon, Melisssa Fudala, the Vice President of Fashion Angels, sent an e-mail to several individuals, including: Andrea Tubbs, a senior buyer

at Wal-Mart, Jacob Wise, a pricing manager for Wal-Mart, Laura Perez, a department manager at Wal-Mart, and several other executives and buying managers at Wal-Mart on or about October 29, 2017 (the "October 29, 2017 Defamatory E-mail").  A true and correct copy of the October 29, 2017 Defamatory Email is attached hereto as **Exhibit B** and incorporated herein.

58.     The October 29, 2017 Defamatory E-mail stated that K7's products "were not labeled correctly" and "does not meet standard government requirements for beauty products." The October 29, 2017 Defamatory E-mail also states that K7's products do not meet safety standard for certain age groups.

59.     Ms. Fudula made these statements knowing they were blatantly false.

60.     Ms. Fudula also manufactured a complaint from a nebulous source in an attempt to give her statements an air of credibility.

61.     The October 29, 2017 Defamatory E-mail was sent solely to harm K7's business relationship with Wal-Mart and to try to commandeer K7's business with Wal-Mart for Fashion Angels.

62.     As a result of the October 29, 2017 Defamatory E-mail, Wal-Mart has been hesitant to continue ordering products from K7.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Contract against Defendant Fashion Angels)**

63.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

64.     The Agreement is a valid and enforceable contract, written between Fashion Angels and K7.

65.     K7 fully and faithfully performed the conditions and obligations set forth in the Agreement.

11

66.     Pursuant to the Agreement, Plaintiff was entitled to a commission rate of 4% and credit for all business that was written from December 10, 2016, yet Fashion Angels failed to pay commissions due and owing in violation of the Agreement.

67.     Defendant Fashion Angels also breached the Agreement because it failed to provide 30 days' notice of termination of the Agreement, and Rincon, who was not authorized to terminate the Agreement, sent Plaintiff a notice of Fashion Angels' termination.

68.     By reason of the foregoing, Plaintiff K7 is entitled to a money judgment against Fashion Angels in an amount to be determined at trial, but no less than Three Hundred Thousand Fifty Dollars ($350,000), together with interest accrued, plus incidental and consequential damages.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Violation of New York Labor Law against Defendant Fashion Angels)

69.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

70.     Pursuant to New York Labor Law ("NYLL") § 191-a, a principal who fails to comply with the provisions of this section concerning timely payment of all earned commissions shall be liable to the sales representative in a civil action for double damages.

71.     Pursuant to the NYLL, an entity, such as K7, can be considered an independent sales representative.

72.     K7 is an independent sales representative of Fashion Angels under the NYLL.

73.     In violation of NYLL §§ 191-a, 191-b, and 191-c, Defendant Fashion Angels has not paid K7 the commissions it is owed pursuant to the Agreement.

74.     Pursuant to the written Agreement, Plaintiff K7 sold Fashion Angels' products to New York customers from its New York offices and the New York City showroom.

75.     By reason of the foregoing, Plaintiff K7 is entitled to double damages against Defendant Fashion Angels in an amount to be determined at trial, but no less than Seven Hundred Thousand Dollars ($700,000), together with interest accrued, plus incidental and consequential damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Unjust Enrichment against Defendant Fashion Angels)**
**(In the Alternative)**

76.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

77.     Defendant Fashion Angels has been unjustly enriched by improperly refusing to compensate Plaintiff for commissions unpaid and owing.

78.     By reason of the foregoing, Defendant Fashion Angels has unfairly and improperly obtained and continues to unfairly and improperly obtain substantial benefits at Plaintiff's expense.

79.     Equity and good conscience require that Defendant Fashion Angels compensate Plaintiff for the value of their unjust enrichment.

80.     Accordingly, Plaintiff K7 is entitled to a money judgment against Defendant Fashion Angels in an amount to be determined at trial, but not less than Three Hundred Thousand Fifty Dollars ($350,000), together with interest accrued, plus incidental and consequential damages in an amount to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Fraudulent Inducement Against M. Miller and Fashion Angels)**

81.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

82.     At a meeting between Mr. Kaplan and Mr. M. Miller in November 2016, M. Miller knowingly and purposely falsely represented to Plaintiff it had $6 million in active business for K7 to service, that Fashion Angels' sales had increased for 2016, and that Fashion Angels had almost $2 million dollars in sales with multiple departments at Target, including the health and beauty department.

83.     M. Miller made these misrepresentations in order to induce K7 to enter into the Agreement.

84.     In fact, Fashion Angels' sales were declining, its total active business earmarked for K7 was approximately $1 million, and Fashion Angels had a limited relationship with the toy departmentat Target that was far less than $2 million in sales.

85.     Mr. Kaplan, and in turn K7, detrimentally relied on these fraudulent misrepresentations regarding Fashion Angels' prior sales.

86.     But for these false misrepresentations, Plaintiff would never have entered into a business arrangement with Fashion Angels or signed the Agreement with Fashion Angels.

87.     Instead, Plaintiff would have formed a partnership with a different manufacturer.

88.     As a result of the foregoing, Plaintiff is entitled to a money judgment against Defendants in an amount to be determined at trial, but not less than Three Hundred Thousand Fifty Dollars ($350,000), together with punitive damages.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Defamation *Per Se* against Defendant Fashion Angels)**

89.     Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

90.     The October 29, 2017 Defamatory E-mail, attached hereto as **Exhibit B** and incorporated herein in its entirety, was sent by Melissa Fudala to Andrew Tubbs, a senior buyer

for Wal-Mart, and at least four other WalMart buyers and executives without authorization from Plaintiff.

91. When Ms. Fudala sent the e-mail, claiming that Plaintiff's products were mislabeled and "failed to meet standard government requirements for beauty products," she knew it was false.

92. The October 29, 2017 Defamatory E-mail was blatantly false.

93. The October 29, 2017 Defamatory E-mail was intentionally sent as a ploy to destroy Plaintiff's relationship with Wal-Mart.

94. Tellingly, the October 29, 2017 Defamatory E-mail ends by saying that Wal-Mart should move its business to Fashion Angels, whose products are purportedly "performing extremely well at retail."

95. As a result of the October 29, 2017 Defamatory E-mail, Wal-Mart's purchases from K7 have significantly declined.

96. As a result of the foregoing, Plaintiff is entitled to a money judgment against Defendant Fashion Angels in an amount to be determined at trial, but not less than Seven Hundred Fifty Thousand Dollars ($750,000).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Defendants for the following relief:

    a. An award of damages for Plaintiff K7 and against Defendant Fashion Angels, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages, including, but not limited to commissions earned and owing pursuant to the terms of the Agreement;

    b. An award of damages for Plaintiff K7 and against Defendant Fashion Angels, in an amount to be determined at trial, plus interest, to compensate Plaintiff for unjust enrichment attributed to Fashion Angels;

c.   An award of damages for Plaintiff K7 and against Defendant Fashion Angels, in an amount to be determined at trial, plus interest, to compensate Mr. Kaplan for Fashion Angels' violation of NYLL.

d.   An award of damages for Plaintiff K7 and against Defendants, in an amount to be determined at trial, plus interest, to compensate for all monetary and/or economic damages stemming from Defendant M. Miller's, and Fashion Angels', fraudulent misrepresentations, including, but not limited to punitive damages;

e.   An award of damages for Plaintiff and against Defendants, in an amount to be determined at trial, plus interest, to compensate Plaintiff for Defendant Fashion Angels' defamatory conduct;

f.   Prejudgment interest on all amounts due;

g.   Punitive damages;

h.   An award of costs that Plaintiff has incurred in this action, including but not limited to, expert fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

i.   Such other and further relief as the Court may deem just and proper.


Dated:  New York, New York
        March 19, 2018


                                        GOLDBERG SEGALLA LLP


                                        /s/ Adam S. Katz
                                        Adam S. Katz
                                        Hilary A. Dinkelspiel
                                        *Attorneys for Plaintiff*
                                        711 3rd Avenue, Suite 1900
                                        New York, NY 10017
                                        Phone: 646.292.8700

## VERIFICATION

Isaac Kaplan hereby affirms and declares the following under penalties of perjury:

1. I am the President of K7 Design Group, Inc., Plaintiff in the above-referenced action.

2. I have and know the contents of the foregoing Amended Verified Complaint and know the allegations contained therein to be true based on my own knowledge, except as to matters alleged on information and belief, and as to those matters I believe them to be true.

3. The grounds of my belief as to all matters in said Amended Verified Complaint are my general knowledge and involvement in the events giving rise to this litigation and a general investigation and review of the facts and records in this case.

4. Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

Dated:     Brooklyn, New York
           March 17, 2018

_____
Isaac Kaplan

8581227.1